## AMERICAN WEEKLY, Inc., v. HOUSTON PRINTING CORPORATION.

### No. 10263.

Circuit Court of Appeals, Fifth Circuit.

May 26, 1943.

For former opinion, see 134 F.2d 447.

W. L. Matthews, of San Antonio, Tex., and John P. Bullington, of Houston, Tex., for appellant.

Frank J. Knapp, George W. Rice, and Jack Binion, all of Houston, Tex., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

PER CURIAM.

The motion for rehearing is denied.

HUTCHESON, Circuit Judge (dissenting).

The more than considerable misgivings which attended my concurrence in the holdings of the majority (1) that Clause A of Par. 8 of the contract was an agreement that appellant would maintain an average ratio of advertising of approximately 32 percent advertising to 68 percent editorial matter in the magazine supplement, and (2) that the words "approximately 54 inches", as used in that clause, had the effect of an agreement for at least that many columns within a one or two column range, have, since reading the petition for rehearing and the brief in support of it, become convictions that those holdings were wrong. The opinion of the court on rehearing in recognizing that we did give an undue rigidity to the word "approximately" has corrected the second of those holdings.

The first remains uncorrected, and it is to that that I address my dissent. In concurring in the original opinion that the reference in Par. 8 to approximately 54 columns of advertising must have been intended to have some effect and that the only effect could have been that attributed by the majority to it, I did so reluctantly on the view that though reformation was not pleaded, the record contained evidence which would support a reformation to make the contract speak to that effect, and there is authority that an appellate court may in such a situation treat the issue as though pleaded. The brief in support of the motion for rehearing has pointed out where the clause originated and has made it clear that its use was descriptive and had nothing to do with fixing the price. As originally proposed, this clause read, "The specifications for this section to be 24 pages carrying a maximum of 54 columns of advertising", and this was changed to "approximately", not to fix a minimum but so as to allow an additional amount of advertising if found feasible. It is quite plain, I think, that the location of this statement in the contract in the place where it is found was a mere happen so and not of any significance in determining the price to be paid. This was to be determined by the price named, $13.50, subject to being changed as the cost factors entering into it changed. In the light of this testimony, I do not believe that if the issue of reformation had been in the case, it could reasonably have been held that the insertion of this clause was intended to have the effect the majority attributes to it. But if I am wrong in this, I think it plain that our opinion was in error in allowing a recovery as to any of the issues except those for which settlements had not been made. Paragraph 4[1] of the contract provides for monthly settlements on account of the amount due by the Post for the weekly supplements, and Paragraph 6[2] provides for monthly settlements on account of advertising revenue. There were

---

[1] "4. The newspaper agrees to accept weekly the number of magazine supplements ordered by it and distribute the same each week as a part of its Sunday newspaper to the extent of its total Sunday circulation. Billings for the magazine supplement shall be made by the Weekly to the newspaper each week and payment for them shall be made by the newspaper to the weekly on the 25th day of each month following the month in which the issues are dated."

[2] "6. The estimated net distributable advertising revenue, as set out in Par. 5 shall be reported to the newspapers each week and settlement of the collected portions of such net distributable advertising revenue shall be made monthly on the 25th day of each month following that in which the advertising is published."

seventeen monthly settlements from January 1, 1938, through April 30, 1939, of the amount due the Weekly and from January 31, 1938, through May 31, 1939, of the amount due the Post. It seems quite plain to me that the parties had fully settled all of their controversies up to and including May 31, 1939, and that they may not now reopen and recover for controversies completely closed by settlement. The record shows that the first controversy was raised by the Post on February 8, 1939, after the contract had been in full force for over a year. The claim then made was that it had a right to cancel the contract so that it would expire on January 1, 1940. The Weekly pointed out that it was too late to give that notice, and the parties went on with the contract up to May 31st, just as they had done before, the Post continuing to receive and pay for the supplements, and the Weekly to pay the advertising. In May, 1939, there was discussion indicating that the Post was not satisfied with the advertising returns and assurance by Mr. Berkowitz that "he was going to attempt to close the gap". Thereafter and until Dec. 31, 1940, the Weekly continued to deliver and the Post continued to receive the supplements, but there were no more monthly settlements. It seems clear to me that the only thing which is open is the account from and after May 31, 1940, when these monthly settlements ceased. For the reasons indicated, I think that the motion for rehearing should be granted, and the judgment should be reversed with directions either that appellee is entitled to no deductions or at least to not more than with respect to issues unsettled for after May, 1939.